JiBYRNES, Judge.
Christine M. Turk (Turk) appeals from the dismissal of her suit against Fame Modeling and Talent Agency, Inc., (Fame) following trial on the merits. Fame, a modeling agency, obtained a modeling job for Turk, a free lance model, with Beezil Design, Inc. (Beezil). Beezil became insolvent and Turk was never paid for the modeling job she performed for Beezil. Turk brought this suit against Fame claiming that Fame is responsible for the payment. The trial court found that Turk was not employed by the Fame, and that Fame was not responsible for paying Turk because Beezil never paid Fame.
There is no written agreement between Turk and Fame. As plaintiff Turk has the burden of proving her claim by the preponderance of the evidence. Turk testified that: “I believe [Fame] contacted me or I contacted [Fame] ...” From this the trial court could reasonably have concluded that, as likely as not, it was Turk that solicited Fame and not vice versa.
Turk went on to testify that she met with Fame to see if she would like to have Fame “... representing me in some of [Fame’s] jobs.” (Emphasis added.) Turk also testified that:
... I’m a free lance model. So I do my bookings directly with the client, himself, but I also work for different agencies. And usually the girl from the agency would call me up and she’ll book a job for me and then she pays me; and then as well as I work for a company that cuts me a check, and if the agency had any help in getting me that job and if I feel like they deserve a percentage of the check, I’ll cut them a percentage of the check. [Emphasis added.]
From this testimony the trial judge could reasonably have concluded that Turk understood that she was paying the agencies for their services in representing her, whether the payment was deducted by the agency in those instances when payment was made through the agency or whether she cut the |2check herself in those instances when she was paid directly by those companies for whom she performed modeling services. She performed no modeling services for Fame. Turk further testified that she considered herself self-employed.
Turk testified that Lee Myers, who ran Fame, told her that she would be paid $255.00 per day for three days work with Beezil for a total of $765.00. Turk was never told what Fame’s deal was with Beezil, but she was told by Fame not to discuss it. She further testified that she was told that she would not be paid until after the job. This is consistent with Fame’s position that Turk was not to get paid unless and until Fame got paid. Turk testified that she was not told that she would not get paid unless Fame got paid. Lee Myers testified that she would have explained to Turk “... that when we receive payment on a job, that’s when we pay the talent. That’s a standard thing that I tell all talent including Christine Turk.” Turk had worked several previous jobs through Fame. Therefore, the trial court could have reasonably concluded that although Lee Myers could not recall specifically explaining this to Turk in connection with *1045 the Beezil job, that Turk knew or should have known that that was the basis of her relationship with Fame based on previous explanations. Such a finding is necessarily implicit in the judgment of the trial court. As this finding is reasonable, we cannot say that it is manifestly erroneous. We therefore have no basis to reverse it on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Turk acknowledged that Fame did not supervise her modeling work and that Fame did not withhold for income tax, Social Security, or unemployment. |3Turk testified that she refused to sign a contract with Fame, the implication being that she wanted to preserve as much independence as possible. Turk was not required to take all jobs referred to her by Fame. Turk testified that: “[Lee Myers] calls me up and asks me if I want to do a job. And she tells me all the details if I want to take it and I take it.” [Emphasis added.]
We find that Fame was acting as agent for Turk and was not a guarantor of payment by Beezil. Such a verbal agency is permitted by LSA-C.C. art 2992. H.U. Young, Inc. v. Duke Advertising Agency, 478 So.2d 1003 (La.App. 4 Cir.1985). This case does not involve any of those instances in which the power of the mandatary must be express as required by LSA-C.C. art. 2997.
The most reasonable conclusion to be drawn from the record is that Fame was acting as an agent for both Beezil and Turk. Such a relationship would fall under chapter three of the mandate section of the Civil Code entitled: “Of The Mandatary Or Agent Of Both Parties.” The following articles from that chapter are relevant:
The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both. [Emphasis original.] LSA-C.C. art. 3016
The obligations of a broker are similar to those of an ordinary mandatary ... LSA-C.C. art. 3017.
Brokers are not responsible for events which arise in the affairs in which they are employed; they are only, as other agents, answerable for fraud or faults. LSA-C.C. art. 3018.
Brokers, except in the case of fraud, are not answerable for the insolvency of those to whom they procure sales or loans, although they receive a reward for their agency and speak in favor of him who buys or borrows. LSA-C.C. art. 3019.
|4From the above Code articles, we conclude that as a matter of fact and law Fame was acting as an “intermediary” or “broker” for Turk and Beezil. We also conclude based on articles 3018 and 3019 that, as a matter of law, Fame is only responsible for fraud or faults, neither of which were alleged by Turk in this case. Fame’s limitation of liability flows by operation of law from its intermediary relationship with Turk and Beezil. It is not necessary that the parties agree to, understand, or even know about these codal provisions for them to have effect. Of course, the parties might be free to shift the risk of loss by contract to the extent that doing so would not violate public policy. But even Turk does not testify that there was an agreement shifting the risk to Fame. Turk went no further than to testify that she was not told she bore this risk. She did not testify that Fame affirmatively offered to assume the risk which is what Fame would have to do if the legal consequences of the code articles quoted above were to be avoided. Implicit in the trial court’s judgment is a finding that Fame made no promise to guarantee payment in case of Beezil’s failure to pay. We cannot say that such a finding is manifestly erroneous.
Just as Turk received no compensation from Beezil, neither did Fame. It appears from the record that Fame may have acted more favorably towards Turk than required by law. Fame has made no claim on Turk for expenses and charges to which Fame would be entitled as a matter of law under LSA-C.C. art. 3022: “.... If there be no fault imputable to the agent, the principal can not dispense with this reimbursement and payment, even if the affair has not succeeded ...” (Emphasis added.) Moreover, Lee Myers testified that she |5offered to waive future commissions to help those *1046 models who suffered losses in connection with Beezil.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.