STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

09-1168

TYCO VENTURES, L.L.C.

VERSUS

JOSHUA WIGGINS, ET AL.

**\*\*\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, CIVIL SUIT NO. 7-0724
HONORABLE J. PHILLIP TERRELL, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

JAMES T. GENOVESE
JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of James T. Genovese, Shannon J. Gremillion, and David E. Chatelain,\* Judges.

AFFIRMED.

Robert G. Nida
Gold, Weems, Bruser, Sues & Rundell
2001 MacArthur Drive
Post Office Box 6118
Alexandria, Louisiana 71307-6118
(318) 445-6471
COUNSEL FOR DEFENDANTS/APPELLANTS:
    H.C. Corbitt, III, and Corbitt Manufacturing Co., Inc.

---

\*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**John W. Munsterman**
**The Munsterman Law Firm**
**807 Johnston Street**
**Post Office Box 1848**
**Alexandria, Louisiana 71309-1848**
**(318) 445-6111**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **TYCO Ventures, L.L.C.**


**George C. Gaiennie, III**
**Gaiennie Law Firm, L.L.C.**
**400 Murray Street, Suite 200**
**Post Office Box 1408**
**Alexandria, Louisiana 71309-1408**
**(318) 767-5911**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **TYCO Ventures, L.L.C.**


**Joshua Wiggins**
**In Proper Person**
**8375 Highway 17**
**Winnsboro, Louisiana 71295**
**DEFENDANT**

**GENOVESE, Judge.**

H.C. Corbitt, III,[1] and Corbitt Manufacturing Company, Inc. (hereinafter collectively referred to as Corbitt), appeal a judgment rendered against them and in favor of TYCO Ventures, L.L.C., in the amount of $30,000.00 as general damages for the wrongful conversion of a tractor. For the following reasons, we affirm the judgment of the trial court.

## PROCEDURAL BACKGROUND

TYCO Ventures, L.L.C. (TYCO), filed a Petition for Order of Possession on October 26, 2007, against Joshua Wiggins, Corbitt Manufacturing Company, Inc., and H.C. Corbitt, III, asserting that it had purchased "a Case [International Harvester] 7140 [t]ractor bearing [s]erial [n]umber JJA001824" from Defendant, Joshua Wiggins, on July 19, 2007. TYCO alleged that subsequent to its purchase of said tractor, "Joshua Wiggins . . . delivered possession of the [Case tractor] to Corbitt . . ." without TYCO's consent.

Corbitt filed an Answer to Petition for Order of Possession on January 18, 2008, admitting "on information and belief" TYCO's assertion that TYCO had purchased the Case tractor from Mr. Wiggins on July 19, 2007. However, Corbitt's answer also asserted "they [were] not in possession of the tractor at issue in this litigation, nor aware of its current whereabouts, and [were] unable to surrender possession of same."

Mr. Wiggins filed an Answer, Defenses, and Reconventional Demand on May 5, 2008. As an affirmative defense, Mr. Wiggins asserted that TYCO failed to state a claim upon which relief could be granted; however, "if [TYCO] was damaged, the

---

[1]H.C. Corbitt, III, is the President/Director of Corbitt Manufacturing Company, Inc.

1

alleged damages were due to the actions, contributory negligence[,] or comparative fault, conduct or negligence of Dean Tyler[2] . . . ." Mr. Wiggins also alleged "that Dean Tyler . . . received the sum of $6,000[.00] for the [Case] tractor." In answer to TYCO's petition, Mr. Wiggins denied delivering the Case tractor to Corbitt without TYCO's consent. In fact, in his answer, Mr. Wiggins admits that he "delivered the [Case] tractor to Corbitt Manufacturing" and that said delivery "was made expressly upon instructions from Dean Tyler." In his reconventional demand, Mr. Wiggins alleged:

> On or about July 19, 2007, after entering into the act of sale with . . . [Mr.] Tyler, [Mr.] Tyler instructed [him] to take the [Case] tractor at issue to Corbitt Manufacturing and secure a loan of $6,000[.00] against the [Case] tractor. In doing so, the [Case] tractor was transferred to the possession of Corbitt Manufacturing with the permission and knowledge of . . . [Mr.] Tyler.
>
> [Mr. Wiggins] did as instructed by Mr. Tyler and received a check in the amount of $6,000[.00] made payable to [Mr.] Tyler for the [Case] tractor.
>
> [Mr. Wiggins] delivered the check from Corbitt Manufacturing to [Mr.] Tyler.
>
> [Mr. Wiggins] avers that he acted only on the instruction of Mr. Tyler and [Mr.] Tyler had complete and full knowledge of the transaction as it was carried out in accordance with his personal instructions.

Mr. Tyler denied the allegations made by Mr. Wiggins. Specifically, Mr. Tyler responded by stating that "at no time and under no circumstances did he instruct, authorize or direct [Mr.] Wiggins to take the [Case] tractor which [Mr.] Wiggins sold to [TYCO] Ventures, L.L.C. on July 19, 2007 to Corbitt Manufacturing for the purpose of securing a loan of $6,000.00 against the [Case] tractor."

---

[2]A. Dean Tyler is the President of Tyler Timber, Inc. and New Way Investments, Inc., both of which are Officers of Plaintiff, TYCO Ventures, L.L.C.

2

TYCO amended its petition on September 30, 2008, to include a prayer for damages from Mr. Wiggins and Corbitt for their alleged conversion of the Case tractor.

On October 7, 2008, Corbitt filed an Answer to Amending and Supplemental Petition wherein they stated:

> Corbitt Manufacturing Company, Inc. on July 19, 2007, was in possession of the tractor under [a] security agreement creating a security interest in the tractor perfected by possession and that any subsequent purchaser of the tractor acquired the same subject to the perfected security interest of Corbitt Manufacturing, Inc. Corbitt Manufacturing Company, Inc. is entitled to be paid in full for all sums secured by its possessory security interest in the tractor in connection with any surrender of the tractor to any alleged purchaser of it.

On the same day, Corbitt also filed an Amended Answer to Original Petition wherein they alleged:

> On June 18, 2007, Corbitt . . . loaned to [Mr.] Wiggins the sum of $4,000[.00], and in connection therewith secured a security agreement of the same date and received possession of the [Case] tractor.
>
> On July 27, 2007, Corbitt . . . loaned to [Mr.] Wiggins $6,000[.00], and secured a security agreement on that date and retained possession of the tractor, giving Corbitt a possessory security interest in the tractor.
>
> Under . . . La.R.S. 10:9-313 and 10:9-320, Corbitt had a perfected possessory security interest in the [Case] tractor and [TYCO] purchased the [Case] tractor subject to Corbitt's possessory security interest in it.
>
> Corbitt is entitled to be paid all amounts secured by its possessory interest in the [Case] tractor before it can be compelled to surrender possession of the [Case] tractor to [TYCO].

Mr. Wiggins filed an Answer to Supplemental Petition on October 8, 2008. In his answer, Mr. Wiggins alleged that "[a]t all times relevant herein, [Mr.] Tyler . . . was aware that the tractor in question was located on the premises of Corbitt . . . ."

On December 3, 2008, a trial on the merits was held, after which the trial court

3

requested post-trial memoranda and took the matter under advisement. The trial court

issued Written Reasons on April 9, 2009, wherein it ruled, in pertinent part:

> The [c]ourt finds that Joshua Wiggins did in fact sell the tractor in question to Dean Tyler on July 19, 2007.

> The [c]ourt finds that Dean Tyler did not allow or authorize Mr. Wiggins to use the tractor as collateral to secure a $6,000.00 loan from Corbitt Manufacturing, Inc. made to Joshua Wiggins.

> The [c]ourt finds that as a matter of law and fact Joshua Wiggins had no right to grant a security interest in the tractor to Corbitt as the tractor was not owned by Mr. Wiggins at the time he sought to grant the security interest.

> The [c]ourt therefore finds that Corbitt could not have obtained a security interest in the tractor.

> The more difficult issue is whether Wiggins and Corbitt conspired to convert or otherwise interfere [with TYCO's] ownership of the tractor.

> The [c]ourt finds that the evidence shows that H.C. Corbitt and Corbitt Manufacturing, Inc. obtained possession of the property of Tyco (Tyler) in an unlawful and unauthorized manner. The evidence is clear that Corbitt and/or Corbitt Manufacturing, Inc. removed the tractor from the state to control possession of the tractor. Joshua Wiggins/or Corbitt have refused to return the tractor. Therefore, the [c]ourt finds that the tractor was converted by Corbitt and Corbitt Manufacturing, Inc.

> The [c]ourt finds therefore that Wiggins and Corbitt and Corbitt Manufacturing, Inc. conspired to convert the tractor owned by Tyler to Corbitt.

> The [c]ourt therefore awards damages to Tyco and Tyler in the amount of $30,000.00, plus interest from the date of judicial demand until paid. In addition, the [c]ourt assesses court costs against the [D]efendants. The [c]ourt also finds that Wiggins, Corbitt and Corbitt Manufacturing, Inc. are solidarily liable for this amount.

A judgment to this effect was signed on April 24, 2009. Corbitt filed a

suspensive appeal.

## ASSIGNMENT OF ERROR

Corbitt assigns as error: "The trial court erred in finding that Corbitt converted

4

the Case tractor." The issue of damages has not been raised and is not before this court.

## LAW AND DISCUSSION

In *Glod v. Baker*, 08-355, p. 10 (La.App. 3 Cir. 11/19/08), 998 So.2d 308, 317, *writ denied*, 08-2937 (La. 2/20/09), 1 So.3d 497, this court set forth the applicable appellate standard of review:

> A trial court's factual determination is subject to the manifest error standard of review. *Bellard v. Am. Cent. Ins. Co.*, 07-1335, 07-1399 (La.4/18/08), 980 So.2d 654. The issue to be resolved by the reviewing court is whether the fact finder's conclusion was a reasonable one. *Id*.

> Conversion consists of an act in derogation of plaintiff's possessory rights. *Angelo and Son, Inc. v. Rapides Bank & Trust Co.*, 95-992 (La.App. 3 Cir. 4/10/96), 671 So.2d 1283, *writs denied*, 96-1173, 96-1204 (La. 6/21/96), 675 So.2d 1083. Any wrongful exercise or assumption of authority over another's goods, depriving him of possession, permanently or for an indefinite period of time, is conversion. *Id*.

Corbitt, in brief, contends that the issue before this court is whether "one holding a possessory security interest in an untitled movable, which security interest was granted by the ostensible owner of the movable, [can] convert the movable by failing to return it to the true owner until the secured debt has been satisfied[.]"

The evidence and testimony in the record reveal that Mr. Wiggins had two loans with First South Production Credit (First South): (1) a farming equipment loan; and (2) a logging equipment loan. Mr. Tyler[3] guaranteed Mr. Wiggins' logging equipment loan; however, much of the equipment which secured his farming equipment loan, which included the Case tractor, also secured his logging equipment loan. Some time in July of 2007, Mr. Tyler was notified that Mr. Wiggins' farming

---

[3]At all times referenced herein, Mr. Tyler acted in a representative capacity for TYCO Ventures, L.L.C and/or Tyler Timber, Inc.

5

equipment loan was due. As guarantor of the logging equipment loan, and aware that Mr. Wiggins had cross-collateralized much of his equipment, Mr. Tyler approached Mr. Wiggins with an offer in an effort to avoid legal action being taken by First South.

The arrangement between Mr. Tyler and Mr. Wiggins resulted in three separate transactions, all executed on July 19, 2007. First, TYCO purchased twelve farming implements, including the Case tractor, from Mr. Wiggins for $23,160.34.[4] Second, Tyler Timber, Inc. purchased eight logging implements from Mr. Wiggins by assuming his mortgage on same with First South. Third, Tyler Timber, Inc. and Mr. Wiggins executed an Equipment Lease with Option to Purchase, whereby Mr. Wiggins leased nine logging implements from Mr. Tyler for forty-five monthly payments of $5,000.00 beginning July 19, 2007.[5]

Prior to Mr. Tyler's purchase of the Case tractor, Mr. Wiggins used the Case tractor as collateral for a $4,000.00 loan from Corbitt on June 18, 2007. According to the testimony of Mr. Wiggins, Corbitt was repaid through weekly installments of $1,000.00 which were deducted from Mr. Wiggins' logging operations. The final payment on this $4,000.00 loan was made to Corbitt on July 20, 2007.

Mr. Wiggins claimed that, pursuant to the Equipment Lease with Option to Purchase, he needed $6,000.00 to make the first payment on his lease of the logging equipment; therefore, he borrowed $6,000.00 from Corbitt. Mr. Wiggins testified that Mr. Tyler knew that he was borrowing money from Corbitt for this purpose and "he knew I was using the [Case] tractor as collateral for $6,000.00." According to Mr.

---

[4]These funds paid off Mr. Wiggins' farming equipment loan with First South.

[5]One noteworthy implement included in the Equipment Lease with Option to Purchase is a 1997 KMC Skidder.

6

Wiggins, he did not directly receive this money from Corbitt; instead, "[Corbitt] asked [him] how [he] wanted the check made out and [he] told them they could make it out to Dean Tyler or Tyler Timber Inc. . . ." Mr. Wiggins testified that around August 15, 2007, Mr. Tyler picked up all of the logging equipment which prevented him from both logging and paying off Corbitt. However, Mr. Wiggins denied ever granting Corbitt the authority to either use the Case tractor or to take it out of Louisiana.

Mr. Tyler testified that on the morning of July 19, 2007, prior to purchasing the farming and logging implements from Mr. Wiggins, he went to Mr. Wiggins' farm located on Palmer Chapel Road and personally inspected the equipment. In particular, Mr. Tyler inspected the Case tractor. According to Mr. Tyler, he discovered that the Case tractor was no longer at Mr. Wiggins' farm within a few days thereafter. When he questioned Mr. Wiggins as to its whereabouts, Mr. Tyler learned that Mr. Wiggins had brought the Case tractor to Corbitt to secure a loan for his logging operation. Mr. Tyler denied telling Mr. Wiggins to pledge the Case tractor as collateral for any loan from Corbitt.

Mr. Tyler claims that he then called H.C. Corbitt, III, on July 24, 2007. According to Mr. Tyler, his conversation with Mr. Corbitt went as follows:

> I informed Mr. [Corbitt] that I had bought the [Case] tractor from [Mr. Wiggins] on July the 19th, and I requested him to bring the tractor back because I needed it to get it ready to [sell]. [Mr. Corbitt] informed me that[] he had six thousand dollars that he had given Josh and he was going to hold the tractor as collateral. . . ."

On cross-examination, Mr. Tyler testified that by the terms of the Equipment Lease with Option to Purchase, Mr. Wiggins was to pay him $5,000.00 per month, not $6,000.00 as stated by Mr. Wiggins. Instead, Mr. Tyler contends that the

7

$6,000.00 he received from Corbitt was for leasing the 1997 KMC Skidder.

Lee Bathall, plant manager of Corbitt's Louisiana division, testified that Corbitt obtained possession of the Case tractor in June of 2007. Contrary to Mr. Tyler's testimony, Mr. Bathall claimed that the Case tractor did not leave Corbitt's facility in Monroe until August of 2007. According to Mr. Bathall, he learned from Mr. Corbitt that Mr. Wiggins had sold the Case tractor after "Mr. Tyler called [Mr. Corbitt] and said that he owned the tractor." Mr. Bathall also recalled that Corbitt gave Mr. Wiggins the $6,000.00 loan on July 27, 2007.

The evidence and testimony indicates that the $4,000.00 loan that Mr. Wiggins obtained from Corbitt was paid in full by Mr. Wiggins on July 20, 2007. This is before the date that Mr. Tyler claims that he informed Mr. Corbitt that TYCO, not Mr. Wiggins, owned the Case tractor and that he wanted it returned to him immediately. The evidence and testimony also indicates that Mr. Wiggins signed a Loan Agreement with Corbitt for the $6,000.00 he borrowed on July 27, 2007. According to Mr. Tyler's testimony, this occurred after he told Mr. Corbitt that TYCO, and not Mr. Wiggins, owned the Case tractor.

Having reviewed the record, we find no error in the trial court's rejection of Corbitt's argument that they had a valid security interest in the Case tractor. When Mr. Wiggins paid off the $4,000.00 loan to Corbitt on July 20, 2007, Corbitt's valid security interest was terminated. When Mr. Wiggins obtained the $6,000.00 loan from Corbitt on July 27, 2007, Mr. Wiggins was no longer the owner of the Case tractor and did not have the right to grant a security interest in the Case tractor to Corbitt. According to Mr. Tyler, he personally notified Mr. Corbitt of this fact on July 24, 2007. Therefore, Corbitt's conversion of the Case tractor began with Mr.

8

Corbitt's refusal to return the Case tractor on July 24, 2007.

After reviewing the evidence, we find the trial court's decision was reasonable in light of the record. The factual findings set out in the Written Reasons are accurate interpretations of the evidence. Additionally, the credibility of the parties involved in these proceedings is at issue. The standard of review for courts of appeal for reviewing credibility is well established.

> [W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. . . .

*Robin v. Allstate Ins. Co.*, 03-1009, 03-926, p. 4 (La.App. 3 Cir. 3/24/04), 870 So.2d 402, 406, *writ denied*, 04-1383 (La. 9/24/04), 882 So.2d 1143 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted)). It is clear that the trial court made demeanor and credibility determinations based upon the conflicting testimony. Recognizing that the trier of fact is in the best position to assess the demeanor and judge the credibility of witnesses when there is conflicting testimony, we cannot say that the trial court was manifestly erroneous or clearly wrong in determining that Corbitt wrongfully converted the Case tractor owned by TYCO.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court. All costs of these proceedings are assessed against Defendants/Appellants, H.C. Corbitt, III, and Corbitt Manufacturing Company, Inc.

**AFFIRMED.**

9