GUIDRY, Justice.
 

 We accepted the certified question presented to this court by the United States Court of Appeals, Fifth Circuit, in
 
 MCI Communications Services, Inc. v. Hagan,
 
 641 F.3d 112 (5th Cir.2011).
 
 [1]
 
 The question is this: “Is the proposed jury instruction in this case, which states that ‘[a] Defendant may be held liable for an inadvertent trespass resulting from an intentional act,’ a correct statement of Louisiana law when the trespass at issue is the severing of an underground cable located on property owned by one of the alleged trespass[e]rs, and the property is not subject to a servitude by the owners of the underground cable but only to the contractual right to keep it, as an existing cable, underneath the property?” For the reasons that follow, we answer this question in the negative.
 

 FACTS and PROCEDURAL HISTORY
 

 We decide this certified question on the facts as presented to us by the Court of Appeals. This case arose out of an incident in which an underground cable owned by MCI Communications Services, Inc. (hereinafter, “MCI”), was allegedly severed. MCI filed suit against Wayne Ha-gan and James Joubert alleging theories of negligence and trespass. MCI alleged that Joubert was negligently excavating |2with a backhoe in violation of the Louisiana Damage Prevention Act (Louisiana Underground Utilities and Facilities Damage Prevention Law), La.Rev.Stat. 40:1749.11
 
 et seq.
 

 [2]
 

 MCI alleged Hagan was vicariously liable because Joubert was
 
 *1150
 
 | sacting as his agent at the time.
 
 [3]
 
 The underground cable at issue was buried in part under land owned by Hagan. After a trial in the United States District Court for the Eastern District of Louisiana, the jury found for Hagan and Joubert. The district court awarded attorneys’ fees to Hagan and Joubert under La.Rev.Stat. 40:1749.14(F) of the Damage Prevention Act. MCI appealed to the Court of Appeals, Fifth Circuit, asserting four separate grounds, only one of which is relevant to our decision today: MCI contended the district court erred when it refused to give the jury MCI’s proposed instruction on trespass.
 

 According to the Court of Appeals, on January 20, 2006, defendant Joubert allegedly severed MCI’s underground fiber-optic cable while using a backhoe on defendant Hagan’s property. MCI contended at trial that the backhoe was being used to install a concrete boat ramp. Hagan and Joubert contended that in the week prior, the two friends decided to go duck hunting on property owned by Hagan. When hunting together, they typically launched an airboat from a boat ramp into a canal on the property. Joubert alleged that he went to Hagan’s property on January 20, 2006, to see if Hagan had cleared driftwood from the canal, which needed to be done before they could launch the airboat. Joubert contended that he then drove Ha-gan’s backhoe onto a concrete boat ramp to clear the driftwood before leaving the property. The defendants returned the next day to hunt and found MCI contractors on the property working on repairing the severed cable.
 

 
 *1151
 
 Hagan had acquired the property in 2004 from Illinois Central Gulf Railroad (hereinafter, “Illinois Central”). MCI alleges that in 1984, its predecessor entered into an agreement with Illinois Central to install and operate a telecommunication system on Illinois Central’s property, and that the property in question was added 14to the agreement in 1985. MCI contends that in Hagan’s purchase agreement with Illinois Central, Hagan agreed not to interfere with any previously bargained for rights to continue operating all existing utilities.
 

 As evidence of Hagan’s negligence, MCI asserted Hagan had violated the requirements of the Damage Prevention Act. Ha-gan asserted a counterclaim against MCI for trespass on his property. The district court ruled that MCI had failed to establish that it had a servitude over Hagan’s property, but that MCI did have a right to keep its existing cable on Hagan’s property due to the contents of the Act of Sale between Hagan and Illinois Central. The district court dismissed Hagan’s counterclaim on these grounds. Hagan did not appeal from that ruling. The case was tried to a jury, which returned a verdict finding that Joubert and Hagan were not negligent. No other findings were made, according to the Court of Appeals, because the remaining jury questions submitted were all contingent on a finding of negligence on the part of at least one of the two defendants. The district court awarded attorneys’ fees to Hagan and Joubert under the provision in the Damage Prevention Act that allows for such fees if the “excavators” prevail in a suit to enforce the act. La.Rev.Stat. 40:1749.14(F).
 

 During the trial, MCI objected to the district court’s refusal to submit to the jury MCI’s proposed instruction regarding trespass to the cable. The district court judge responded that he felt “that it’s a part of the negligence aspect of the case” and that because MCI did not have a servitude, he thought it was not “an appropriate charge.” MCI’s requested instruction on trespass reads in relevant part:
 

 Trespass is an unlawful invasion of the property or possession of another person without consent. Damage to property is a trespass regardless of whether the Defendants intended the damage to the property or were negligent. A Defendant may be held liable for an inadvertent trespass resulting from an intentional act. Therefore, the basic standard applicable to the Defendants is that they must refrain from taking intentional action that results in harm to the Plaintiff.
 

 | .^According to the Court of Appeals, the evidence presented at trial would, in its view, be sufficient to support a finding that the MCI cable was struck and damaged by movement of the backhoe intentionally made by Joubert as he operated it with Hagan’s permission, and on his behalf, although Joubert and Hagan did not intend for the backhoe to strike the underground cable, which they did not see and the precise location of which they did not know. MCI contended the district court erred when it refused to submit to the jury its proposed instruction on trespass and the requisite intent therefor. MCI’s view was that Louisiana law defines trespass as an unlawful physical invasion of property in the possession of another, and the only intent required is the trespasser’s intent to perform the act which constitutes the trespass.
 

 Because the district court ruled before trial that MCI did not have a servitude, the Court of Appeals found MCI was not entitled to recover for a trespass to land. However, though MCI apparently did not assert as much, the Court of Appeals opined that MCI may be entitled to have
 
 *1152
 
 the jury instructed on a claim of trespass to chattels, which that court described as a claim for damages to personal property of the plaintiff — the personal property in this case being MCI’s underground cable. Because it believed that Louisiana courts have not considered the intent standard applicable to claims of trespass to underground cables, and because it found no clear consensus either within the Fifth Circuit or across all jurisdictions as to whether strict liability in a trespass action is an appropriate standard for damage to underground utilities by excavators, the Court of Appeals declined to determine whether MCI’s proposed jury instruction was an accurate statement of Louisiana trespass law as it pertains to damage to underground utilities.
 

 |fiIn deciding to invoke the certification privilege granted by Louisiana Supreme Court Rule XII, the Court of Appeals reasoned that, if MCI’s requested jury instruction was a substantially correct statement of Louisiana law, then it was reversible error for the trial court not to have given that instruction, and MCI would be entitled to a new trial on the theory of trespass. Otherwise, if the requested jury instruction is not a substantially correct statement of Louisiana law, a new trial on the merits would not be required.
 

 DISCUSSION
 

 Inherent in the Fifth Circuit’s question is whether Louisiana law provides for a distinct tort of trespass to movables akin to that of the common law claim of trespass to chattels. As the Fifth Circuit noted, MCI did not cite, nor does it do so in this court, to any Louisiana court cases that deal specifically with the intent standard for trespass to chattels. More pertinently, however, MCI has not cited to any Louisiana case recognizing a tort of trespass to chattels, much less one in the form of a trespass to underground cable, which the Fifth Circuit understandably presumed was a chattel, or a movable under Louisiana law, rather than immovable property. It is this latter issue on which our decision today turns.
 

 In its presentation to this court, MCI makes two arguments. MCI first argues that it has some possessory interest in Mr. Hagan’s immovable property by virtue of either the agreement among MCI’s and Mr. Hagan’s predecessors, which agreement was perpetuated in the Act of Cash Sale, or, as MCI stressed in oral argument, simply because of its cable’s physical proximity to and direct contact with the dirt underlying Mr. Hagan’s property.
 
 [4]
 
 MCI thus argues that Hagan and 17Joubert committed a trespass by unlawfully and physically invading upon MCI’s possessory interest in immovable property when the backhoe they were intentionally operating inadvertently came in contact with the cable and the dirt surrounding it. We dispose of this first argument by noting the federal district court already determined
 
 *1153
 
 that MCI had no servitude over Mr. Ha-gan’s land, and thus, under Louisiana law, MCI had no possessory interest in Mr. Hagan’s land.
 
 [5]
 
 The Court of Appeals accepted the district court’s finding; thus, the federal courts have previously found that MCI had merely a contractual right to leave its cable on Mr. Hagan’s land at the time of the incident involving the backhoe.
 
 [6]
 
 Indeed, the Court of Appeals repeatedly pointed out in its opinion that MCI did not have a servitude over Mr. Hagan’s property. Consequently, we decline to decide anew or otherwise review a factual and legal determination that was settled in the federal courts.
 

 MCI next argues that it can recover in trespass regardless of whether Hagan and Joubert were negligent so long as they intended to perform the act of operating the backhoe, which resulted in the trespass, i.e., contact with its cable or that Isportion of Mr. Hagan’s land in which MCI had some possessory interest. However, the issue of whether MCI had some possessory interest in the property has already been resolved against MCI.
 
 [7]
 

 Essentially, the Fifth Circuit’s inquiry is whether Louisiana law recognizes a distinct tort of “trespass to chattels” and, if so, can a “trespass to chattels” be committed inadvertently if it results from an otherwise intentional act. No party has cited to any case or treatise discussing the common law claim of trespass to chattels. Black’s Law Dictionary defines trespass to chattels as “[t]he act of committing without lawful justification, any act of direct physical interference with a chattel possessed by another. The act must amount to a direct forcible injury.” Black’s Law Dictionary, p. 1643 (9th ed.2009). Some Louisiana commentators have discussed the claim of trespass to chattels. “Trespass to chattels is the
 
 intentional
 
 intermeddling with a chattel (movable) in the possession of another that damages the chattel, reduces its value, or
 
 *1154
 
 deprives the possessor of the use of the chattel for a significant period of time.” Frank L. Maraist and Thomas C. Galligan, Jr.,
 
 Louisiana Tort Law,
 
 § 2.06[8], p. 2-34 (2004) (emphasis supplied). These commentators note the tort of trespass to movables is generally treated as a conversion in Louisiana.
 
 Id.,
 
 p. 2-35.
 
 [8]
 

 See also
 
 12 William E.
 
 Crawford, Louisiana Civil Law Treatise; Tort Law
 
 (2d ed. 2009) (“The taking or damage of movable property in the possession of another is regarded as a trespass. It happens often when repossession through self-help is exercised.”). The Restatement (Second) of Torts explains that a trespass to chattel “may be committed by
 
 intentionally
 
 (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.” Restatement (Second) of Torts, § 217 (1965) (emphasis supplied).
 
 [9]
 
 Thus, the common law claim of trespass to chattels appears to require intent to interfere with another’s interest in movable property before an action for trespass to chattels may lie.
 
 [10]
 

 
 *1155
 
 |1ftAt any rate, in Louisiana, the victim of an intentional intermeddling with a movable in the possession of another, or even accidental damage to a movable that belongs to another, which is the more apt description under the facts of this case, has an adequate remedy under the law of tort without recourse to the common law trespass to chattels. La. Civ.Code art. 2315(A) provides that “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” As we noted in
 
 Dual Drilling Co. v. Mills Equipment Investments, Inc.,
 
 98-0343 (La.12/1/98), 721 So.2d 853, 856, in rejecting the adoption of the strict liability remedy of the common law action of conversion, “[o]ur civilian remedies amply protect personal and real rights in movable property and should not be obscured by an application of common law ... principles.” Thus, MCI had available to it, as the owner of a movable allegedly damaged by the fault of another, the delictual action in tort.
 
 [11]
 
 Moreover, the Louisiana legislature has created specific statutes regarding damage to underground cables in the above-described Damage Prevention Law, placing certain statutory duties upon the excavator. However, a violation of the statute does not result in either strict civil liability or negligence
 
 per se;
 
 instead, the failure of an excavator to detect the presence of an underground utility as required by statute subjects the excavator to | n delictual liability under the theory of negligence, and any statutory violation is considered in the traditional duty-risk analysis.
 
 See, e.g., Bellsouth Telecommunications, Inc. v. Eustis Engineering Co., Inc.,
 
 07-865 (La.App. 4 Cir. 12/9/07), 974 So.2d 749. Thus, the federal district court was correct in determining that MCI’s “trespass” claim was “part of the negligence aspect of the case — or the claim of negligence.”
 
 [12]
 

 We therefore answer the question certified to us in the negative: The proposed jury instruction in this case, which states in part that “[a] Defendant may be held liable for an inadvertent trespass resulting from an intentional act,” is not a correct statement of Louisiana law when the “trespass” at issue is the severing of an underground cable located on property owned by one of the alleged trespassers, and the property is not subject to a servitude by the owners of the underground cable but only to the contractual right to keep it, as an existing cable, underneath the property.
 

 
 *1156
 
 DECREE
 

 We answer the certified question as set forth in this opinion. Pursuant to Rule XII, Supreme Court of Louisiana, the judgment rendered by this court upon the question certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.
 

 CERTIFIED QUESTION ANSWERED
 

 [1]
 

 .
 
 MCI Communications Services, Inc. v. Hagan,
 
 11-1039 (La.07/01/11), 64 So.3d 234.
 

 [2]
 

 . The Damage Prevention Act sets forth the public policy of this state, which is to promote the protection of property, workmen, and citizens in the immediate vicinity of an underground facility or utility from damage, death, or injury and to promote the health and well-being of the community by preventing the interruption of essential services which may result from the destruction of, or damage to, underground facilities or utilities. La.Rev. Stat. 40:1749.11(B). Regarding excavation, demolition, and prohibitions thereof, La.Rev. Stat. 40:1749.13, at the time relevant to the case before us, provided in pertinent part:
 

 A. Except as provided in this Section, no person shall excavate or demolish in any street, highway, public place, or servitude of any operator, or near the location of an underground facility or utility, or on the premises of a customer served by an underground facility or utility without having first ascertained, in the manner prescribed in Subsection B of this Section, the specific location as provided in R.S. 40:1749.14(D) of all underground facilities or utilities in the area which would be affected by the proposed excavation or demolition.
 

 
 *1150
 
 B. (1) Except as provided in R.S. 40:1749.15, prior to any excavation or demolition, each excavator or demolisher, including cable television owners or operators, shall serve telephonic notice of the intent to excavate or demolish to the regional notification center or centers serving the area in which the proposed excavation or demolition is to take place. Such notice shall be given to the notification center at least forty-eight hours....
 

 (2) This notice shall contain the name, address, and telephone number of the person filing the notice of intent, and, if different, the person responsible for the excavation or demolition, the starting date, anticipated duration, and description of the specific type of excavation or demolition operation to be conducted, the specific location of the proposed excavation or demolition and a statement as to whether directional boring or explosives are to be used....
 

 [[Image here]]
 

 (4) Notice shall be given and shall include a specific location request for excavation or demolition work to be performed at least forty-eight hours,.... The marking of an operator’s facility or utility shall be provided for excavation or demolition purposes only.
 

 (5) The excavator or demolisher shall wait at least forty-eight hours following notification before commencing any excavation or demolition activity, except in the case of an emergency as defined in the provisions of this Part or if informed by the regional notification center that no operators are to be notified....
 

 Following the giving of statutory notice, the regional notification center notifies "all member operators having underground facilities in or near the site of the proposed excavation.” La.Rev.Stat. 40:1749.14(B). The operator then must provide the excavator with the specific location and type of underground facilities and may visit the site and mark the location and type of utilities involved. See La. Rev.Stat. 40:1749.14(C). La.Rev.Stat. 40:1749.20 sets forth civil penalties for excavators who violate these provisions. La.Rev. Stat. 40:1749.21(A) further provides: "Except as otherwise specifically provided herein, the provisions of this Part shall not affect any civil remedies for personal injury or property damage, including damage to underground facilities or utilities.”
 

 [3]
 

 . Verizon Business Global filed the lawsuit against Hagan and Joubert. The district court later allowed MCI to be substituted as plaintiff once that company was determined to be the owner of the cable.
 

 [4]
 

 . Though not specifically articulated as such, MCI seems to be suggesting that its cable has become a component part of the land,
 
 see
 
 La. Civ.Code art. 465 ("Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts.”), and thus MCI has some possessory interest in an immovable, such that a trespass to immovable property might lie. However, we find no merit to the implicit suggestion that the MCI-owned cable itself is anything but a movable.
 
 See generally,
 
 2 A.N. Yianno-poulos,
 
 Louisiana Civil Law Treatise; Property,
 
 §§ 141
 
 et seq.,
 
 p. 318 (4th ed. 2001) ("According to the Louisiana Civil Code[,] constructions permanently attached to the ground, other than buildings, are component parts of a tract of land when they belong to the owner of the ground and movables when they belong to another person.”) (footnotes omitted).
 

 [5]
 

 . There are two kinds of servitudes: personal servitudes and predial servitudes. La. Civ. Code art. 533. A personal servitude is a charge on a thing for the benefit of a person. La. Civ.Code art. 534. There are three kinds of personal servitudes: usufruct, habitation, and rights of use.
 
 Id.
 
 The right of use is a “limited personal servitude” that "confers in favor of a person [or legal entity, La. Civ.Code art. 641,] a specified use of an estate less than full enjoyment.” La. Civ.Code art. 639.
 
 See also
 
 3 A.N. Yiannopoulos,
 
 Louisiana Civil Law Treatise; Personal Servitudes,
 
 § 223, p. 455 (4th ed.2000). Here, the district court found that MCI had no servitude of any kind over Mr. Hagan’s property. Further, there has been no showing that the mere existence of the cable itself created a limited personal servitude in favor of MCI. Consequently, MCI can show no possessory interest in immovable property.
 

 [6]
 

 .
 
 See
 
 3 A.N. Yiannopoulos,
 
 Louisiana Civil Law Treatise; Personal Servitudes,
 
 § 227, p. 464 (4th ed. 2000) ("In transactions concerning immovable property, ... questions frequently arise whether an instrument was intended to transfer ownership, to establish a dismembership of ownership [such as a servitude], or to impose merely personal obligations. The resolution of these questions is a matter of contractual interpretation governed by the general rules of construction of juridical acts as well as by rules applicable specifically to instruments that purport to create servitudes.”) (footnotes omitted).
 

 [7]
 

 .The cases cited by MCI with regard to whether a trespasser must intend to trespass on the property or intend to cause damage thereon, or whether the trespasser may be liable for an inadvertent trespass which results from an intentional act, involved trespasses to land owned or possessed by another. See
 
 Harrison v. Petroleum Surveys, Inc.,
 
 80 So.2d 153 (La.App. 1st Cir.1955);
 
 Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.,
 
 00-2754 (La.App. 4 Cir. 11/14/01), 803 So.2d 86,
 
 writ denied,
 
 01-3292 (La.3/8/02), 811 So.2d 887. Accordingly, these cases are inapplicable in determining our answer to the certified question.
 

 [8]
 

 . "A conversion is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel.”
 
 Dual Drilling Co. v. Mills Equipment Investments, Inc.,
 
 98-0343 (La.12/1/98), 721 So.2d 853, 857. But, as we explained in
 
 Dual Drilling,
 
 "[t]he conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation.”
 
 Id.
 
 Thus, in
 
 Dual Drilling,
 
 we found that civil law remedies, including a delictual action in tort, effectively protect victims without the necessity of adopting the common law version of conversion. Accordingly, we declined to adopt strict liability, but instead required the plaintiff to prove the fault of the defendant under La. Civ.Code art. 2315.
 
 Id.,
 
 n. 3.
 

 [9]
 

 . The Restatement sets forth the liability to the possessor of the chattel as follows:
 

 One who commits a trespass to chattel is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.”
 

 Restatement (Second) of Torts, § 218 (1965).
 

 [10]
 

 .One Louisiana commentator has explained the common law claim as follows:
 

 Damages for unprivileged interferences with the possession of tangible personal property may be recovered in trespass. However, in contrast with real property, the action here lies only for intended injurious interferences. Negligent interferences may be actionable under the law of negligence and, if they fulfill the requirements of conversion, by an action under that name.
 

 2 A.N. Yiannopoulos,
 
 Louisiana Civil Law Treatise; Property
 
 § 346, p. 687(4th ed.2001) (footnotes omitted).
 

 Additionally, and perhaps more pertinently, Comment (b) to § 217 of the Restatement (Second) of Torts explains:
 

 Necessity of intent.
 
 Under early common law pleading, the form of action for trespass to a chattel would lie for any direct and immediate interference with the chattel, whether the trespass was intentional, or negligent, or even accidental. With the passage of time and the abolition of the common law forms of action in many states, and their modification in others, the word "trespass,” so far as it applied to interference with chattels, has come to be limited to intentional interferences. Some vestiges of the earlier usage remain in some jurisdictions, where it is possible to speak of a negligent “trespass” to a chattel. Even in such jurisdictions, however, such "trespasses” are governed by the ordinary rules of negligence actions.
 

 This Section follows the commonly accepted terminology, by which there can be no unintended "trespass” to a chattel. Under the rules stated in Chapter 12 of this Restatement, the actor may be subject to
 
 *1155
 
 liability for harm resulting from a negligent interference with a chattel. Such liability is dealt with as in other cases of negligence, in which the word "trespass" usually is not even mentioned. Under the rules stated in Chapters 20 and 21, there may also be liability for harm to a chattel resulting from strict liability, without either intent or negligence. Again any such liability is nearly always rested upon the nature of the actor’s conduct itself, without any reference to "trespass.”
 

 Restatement (Second) of Torts, Ch. 9, § 217, pp. 417-18 (1965).
 

 [11]
 

 . We do not address whether MCI may have had an action sounding in contract for an alleged breach of the agreement between the parties.
 

 [12]
 

 . Even though the term "trespass” is occasionally used in Louisiana jurisprudence, our civil law traditions fully safeguard the rights of owners and possessors of immovable property.
 
 See
 
 2 A.N. Yiannopoulos,
 
 Louisiana Civil Law Treatise; Property,
 
 § 293, p. 579 (4th ed. 2001) ("Actions for damages on account of interference with one’s ownership or possession of immovable property, including unauthorized use of a predial servitude, and unlawful taking of timber, minerals, or dirt, are often styled ‘trespass' actions. However, despite the use of common law terminology, such actions are firmly grounded on Louisiana legislative texts governing delictual actions and ownership or possession of immovable property.”)(footnotes omitted).