NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-874

KAYLIN RENEE CELESTINE, EXECUTRIX FOR THE ESTATE OF
MILTON J. THIBEAUX

VERSUS

BRENDA DUGAS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20101379
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

James Richard Leonard, Jr.
Attorney at Law
P. O. Box 82367
Lafayette, LA 70598-2367
(337) 232-0823
COUNSEL FOR PLAINTIFF APPELLANT:
    Kaylin Renee Celestine, etc.

**Louis Clayton Burgess**
**Attorney at Law**
**605 W. Congress St.**
**Lafayette, LA 70501**
**(337) 234-7573**
**COUNSEL FOR DEFENDANT APPELLEE:**
    **Brenda Dugas**

**SAUNDERS, J.**

This case involves an action by a plaintiff, as representative of an estate, against the sister of the decedent for breach of fiduciary duty and/or conversion. The estate alleges entitlement to monies owed for this breach and conversion. The trial judge, on directed verdict, found the representative did not meet her burden of proving a fiduciary duty, breach, or conversion, and dismissed the case at plaintiff's cost. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

On March 1, 2010, Appellant-Plaintiff Kaylin Renee Celestine ("Celestine"), as Executrix for the Estate of Milton J. Thibeaux ("the Estate" and "Mr. Thibeaux"), filed a Petition for Return of Monies against Appellee-Defendant Brenda Dugas ("Dugas"). Celestine's suit alleged she was the daughter of Mr. Thibeaux[1] and that Dugas converted property belonging to the Estate between June 1, 2003, and November 1, 2009, when Celestine assumed control of the property.

Mr. Thibeaux, Celestine's alleged father and Dugas' brother, on whose behalf Celestine brought suit, died over twenty years ago on August 29, 1992. Celestine was twelve years old at the time of his death. His estate was not opened until November 12, 2009.

When Mr. Thibeaux died, his family, including Dugas and Celestine, believed Joseph and Rita Thibeaux ("Joseph" and "Rita"), Dugas and Mr. Thibeaux's parents, had ownership in the property with their son, on which a small convenience store was located, in Duson, Louisiana. Mr. Thibeaux managed the store during his lifetime. Upon his death, Joseph and Rita continued paying a

---

[1] There is no evidence of a presumption of paternity in Celestine's favor, nor is there evidence that she has been formally acknowledged or avowed by Mr. Thibeaux. Additionally, there is no evidence of a paternity action brought on her behalf. The time to institute such prescribed one year after Mr. Thibeaux's death. La.Civ.Code art. 197.

mortgage on the property and rented the store out every month. The mortgage was paid off in full and canceled in 1996.

After the death of their son, Joseph and Rita asked their daughter, Dugas, to help them manage the store so they would not be taken advantage of. Dugas admitted her parents were undereducated and did not have a bank account. She discussed store business with them, helped communicate with renters about any problems that arose, and collected rent. Because her parents did not have a checking account, Dugas cashed checks through her own banking account before paying the mortgage and giving the remaining money to them. She also handled their personal matters.

Rita died in July 2006 and Joseph died in December 2007. Dugas continued to collect rental payments and kept the cash for her parents' estate. Their estate was never opened. From January 2008 until just before the trial of this matter, the amount collected from the rental income was $10,108.64. Dugas documented all of the financial details of her parents' transactions. She continued to pay the parish and city taxes for the property, as well as insurance on the property, until Celestine's attorney contacted her, and asserted Mr. Thibeaux's estate was the proper beneficiary to the property and its fruits. At that time, Dugas was advised that all rental monies should be routed to Celestine, as the representative of the Estate, and directed them to Celestine's attorney.

Thereafter, Celestine, through the Estate of Milton Thibeaux, brought suit for the return of the rental monies collected by Dugas, alleging a sum owed of $44,450.00. The Estate also sought interest on those monies and costs of litigation.

A bench trial was held on November 21, 2011. After Dugas moved for a directed verdict, the trial judge found Celestine did not meet her burden of proving the existence of a fiduciary duty, breach of a fiduciary duty, conversion, or bad

faith on the part of Dugas. The claim was dismissed and costs were assigned to Celestine.

Celestine appeals.

## ASSIGNMENTS OF ERROR

Celestine sets forth the following assignments of error:

1.  The trial judge erred in finding that Dugas did not act as a fiduciary by taking control and managing the property of the Estate.

2.  The trial judge erred in finding that Dugas did not convert the rental monies owned by the Estate in her capacity as fiduciary.

3.  The trial judge erred in not awarding monies owed to the Estate.

## LAW AND ANALYSIS

**Standard of Review**

At the close of Celestine's case, the trial judge granted Dugas' motion for a directed verdict.[2] A directed verdict is appropriately granted in the event that the "facts and inferences are so overwhelming in favor of the moving party that the judge finds that reasonable men could not arrive at a contrary verdict." *Guste v. Nicholls Coll. Found.*, 564 So.2d 682, 689 (La.1990).

"On review, an appellate court also considers whether the evidence submitted indicates that reasonable triers of fact would be unable to reach a different verdict." *McNabb v. La. Med. Mut. Ins. Co.*, 03-0565, p. 12 (La.App. 3 Cir. 11/5/03), 858 So.2d 808, 816-17, *writ denied*, 867 So.2d 701, 03-3344 (La. 2/13/04), *writ denied*, 867 So.2d 702, 03-3339 (La. 2/13/04), *citing Pratt v. Himel Marine, Inc.*, 01-1832 (La.App. 1 Cir. 6/21/02), 823 So.2d 394. An appellate court

---

[2] Directed verdicts under La.Code Civ.P. art. 1810 are used in jury trials to promote judicial efficiency when evidence points overwhelmingly to one conclusion. The case at hand was a bench trial, so a directed verdict was improper. Rather, involuntary dismissal under La.Code Civ.P. art. 1672(B) should have been utilized. Nevertheless, this issue was not raised on appeal, so it is not subject to review.

3

considers the evidence and evaluates the propriety of a directed verdict in light of and under the substantive law applicable to the nonmoving party's claim. *Frazier v. Zapata Protein USA, Inc.*, 02-0605 (La.App. 3 Cir. 12/11/02), 832 So.2d 1141, *writ denied*, 03-0145 (La. 3/21/03), 840 So.2d 537, *writ denied*, 03-0126 (La. 3/21/03), 840 So.2d 539.

**Assignment of Error No. 1:**

The first assignment of error deals with the substantive law applicable: the existence of a fiduciary duty. "[F]or a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *Scheffler v. Adams & Reese*, *LLP.*, 06-1174 (La. 2/22/07), 950 So.2d 641.

> The word "fiduciary," as a noun, means one who holds a thing in trust for another a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking.

*Id.* at 647, *quoting State v. Hagerty*, 205 So.2d 369, 374 (1967). "The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Lange v. Orleans Levee Dist.*, 10-0140, pp. 16-17 (La. 11/30/10), 56 So.3d 925, 935.

Celestine asserts Dugas assumed control over the Estate's property by negotiating leases, collecting rent, authorizing repairs, making mortgage payments, paying property taxes, and by depositing rental monies. She asserts that by undertaking these duties, she became a succession representative, which placed a fiduciary duty on her to the heirs of the Estate. Louisiana Code of Civil Procedure article 3191, in pertinent part, sets forth the general duties of a succession representative:

4

A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.

"'Succession representative' includes an administrator, provisional administrator, administrator of a vacant succession, executor, and dative testamentary executor." La.Code Civ.P. art. 2826(3). The Official Revision Comments to La.Code Civ.P. art. 2826, subsection (b), clarify this term:

The term "succession representative" is used throughout the articles in this Book dealing with the rights, duties, power, and authority common to administrators, provisional administrators, administrators of vacant successions, executors, and dative testamentary executors, for purposes of brevity, and to avoid repeated enumeration of all of these succession representatives.

An administrator must file a petition for appointment. La.Code Civ.P. art. 3091. After the filing of a detailed descriptive list or inventory, the district court then issues an order authorizing the appointment of an administrator. La.Code Civ.P. arts. 3094, 3096, and 3136. The functions, powers, and duties of the succession representative are imposed when the administrator furnishes security, takes an oath, and is issued letters of administration. La.Code Civ.P. arts. 3151, 3158, and 3159. These letters serve as evidence of the confirmation or appointment of the succession representative, his qualification, and his compliance with all necessary requirements. La.Code Civ.P. art. 3159.

A succession representative is a fiduciary with respect to the succession and has the duties of collecting, preserving, and managing the property of the succession and has responsibility for damages. La.Code Civ.P. art. 3191. Thus, the Louisiana Code of Civil Procedure refers to a precise legal definition and procedure which entails the creation of a legal officer, i.e., the role of a prudent administrator who is answerable to the court, liable for damages incident to his

5

failure to act properly, and subject to disqualification, revocation, or removal. La.Code Civ.P. arts. 3097, 3181, and 3182.

"The statutory law governs the appointment and function of the succession representative; it does not permit a popular definition of the term nor does it provide for a judicial extension of the concept of succession representative." *Successions of Marcotte*, 449 So.2d 732, 737 (La.App. 3 Cir. 1984). It cannot be said that Dugas was a succession representative such that the fiduciary duties under La.Code Civ.P. art. 3191 were applicable to her management and preservation of the Estate. The Code of Civil Procedure requires such a position to be formally appointed. Merely undertaking the task of helping her parents did not make Dugas a fiduciary to Celestine or to any other potential heirs of the Estate of Milton J. Thibeaux. Dugas had no fiduciary duty to the Estate as she was not its representative under the dictates of Louisiana law.

Celestine cites case law where the undertaking of a task can create a fiduciary duty. Examples include a builder purchasing insurance proceeds for the benefit of the owner and acting as a mandatary. As a mandatary, the builder owed a fiduciary obligation to the owner. *See Sampson v. DCI of Alexandria*, 07-671 (La.App. 3 Cir. 10/31/07), 970 So.2d 55. Mandate law is a contractual principle whereby one person gives power to another to transact for him, and in his name, one of several affairs. La.Civ.Code art. 2989. In the *Sampson* case, there was interaction between the principal and the mandatary, instructions were given, and the mandatary went on to act for the principal. Oral agreements may be acceptable to create certain types of mandate. *See Turk v. Fame Modeling and Talent Agency, Inc.*, 94-2574 (La.App. 4 Cir. 3/16/95), 652 So.2d 1043. Acceptance of a mandate may be either express or implied. *See Savoie v. Estate of Rogers*, 442 So.2d 1323

(La.App. 3 Cir. 1983), *writ denied, S*avoie v. Estate of Rogers*, 445 So.2d 1227 (La.1984)

The question of mandate/agency is a factual determination, and the essential test to determine whether implied agency exists is whether the principal has the right to control the conduct of the agent and whether the agent has the right and authority to represent or bind the principal. *Lewis v. Succession of Johnson*, 05-1192 (La. 4/4/06), 925 So.2d 1172. "An agency relationship is created expressly by the oral or written agreements between the parties." *AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc*., 385 So.2d 426, 429 (La.App. 1 Cir. 1980). It is created impliedly through apparent authority when the principal has the right to control the conduct of the agent and the agent has the authority to bind the principal. *E. Smith Plumbing, Inc. v. Manuel*, 11-1277 (La.App. 3 Cir. 3/28/12), 88 So.3d 1209. There must be some form of acceptance by the mandatary in order for the mandatary to be bound as an agency relationship can never be presumed. *See Cartinez v. Reliable Amusement Co., Inc.*, 99-333 (La.App. 3 Cir. 11/3/99), 746 So. 2d 246, *writ denied*, 99-3404 (La. 2/4/00), 754 So. 2d 235 .

This case lacks any sort of control by Celestine or any other heirs of the Estate over Dugas such as to create a mandatary relationship. There was no apparent authority on the part of Dugas to bind Celestine. Dugas was not acting for Celestine's benefit. There was no written or oral interaction between them. Dugas did not accept a mandate impliedly or expressly. Therefore, there was no duty between Celestine and Dugas. As the trial judge noted, the mere existence of familial relationship, without more, does not create a contractual mandate relationship between the parties or impose a fiduciary duty. Furthermore, Dugas had no fiduciary duty to the Estate itself because she was not its representative. A

7

reasonable trier of fact would be unable to reach a contrary conclusion. Thus, the trial judge was not in error in granting Dugas' directed verdict.

**Assignment of Error No. 2:**

Celestine also appeals the finding by the trial judge that Dugas did not convert the rental monies owned by the Estate in her capacity as fiduciary.

> The Civil Code itself does not identify causes of action for "conversion." However, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages. La.Civ.Code arts. 511, 515, 521, 524, 526, and 2315. Consequently, the dispossessed owner of a corporeal movable may be accorded one of three actions to enforce his rights of ownership.
>
> The first is the revendicatory action for the recovery of a movable transferred: 1) by the owner or legal possessor to a person in bad faith, 2) for less than fair value, or 3) when the movable was lost or stolen. A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE §350-51, at 680-83 (2nd ed. 1991 & Supp.1998). The second action arises under the law of delictual obligations and exists under the theory of unjust enrichment. A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE §356, at 689-90.

*Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 98-0343, 98-0356, p. 4 (La. 12/1/98), 721 So.2d 853, 856 (*footnotes omitted*).

The third action type of action is relevant to the instant case and is also a delictual action. "It is available to an owner dispossessed as a result of an offense or quasi-offense or, in other words, a 'tort.' This action is grounded on the unlawful interference with the ownership or possession of a movable and is frequently termed an action for "conversion" in Louisiana." *Dual Drilling Co.*, 721 So.2d at 857. Conversion of this type is defined as "[a]ny wrongful exercise or assumption of authority over another's goods, depriving him of possession." *TYCO Ventures L.L.C. v. Wiggins*, 09-1168 (La.App. 3 Cir. 3/10/10), 32 So.3d 1168, 1171, *quoting Glod v. Baker*, 08-355, p. 10 (La.App. 3 Cir. 11/19/08), 998

8

So.2d 308, 317. "A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession permanently or for an indefinite time, is a conversion." *Fontenot v. First Fed. Sav. of Opelousas*, 98-1066 (La.App. 3 Cir. 2/3/99), 736 So.2d 864, *quoting Labbe v. Premier Bank*, 618 So.2d 45, 46 (La.App. 3 Cir. 1993).

"The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation." *Dual Drilling Co.*, 721 So.2d at 857. The plaintiff is, therefore, required to prove fault on the part of the defendant under La.Civ.Code art. 2315. *MCI Commc'n Serv., Inc. v. Hagan*, 11-1039 (La. 10/25/11), 74 So.3d 1148.

Dugas testified she collected the rental monies and paid the mortgage in order to assist her parents. In 1996, she paid off the mortgage and continued to give the rental monies to her parents. As far as she knew, her parents owned the property and were entitled to its fruits. In January 2008, after the death of her parents, she began putting the rental income away without using it.

Celestine alleges monthly acts of conversion by Dugas, in Dugas' role as a fiduciary, until Dugas handed over control of the rental income to the Estate in November of 2009. The Estate did not assert ownership over the monies until the succession was opened in 2009. Up until that point, Dugas did not know who was entitled to this rental income; she believed her parents when they asserted they were entitled to it. Therefore, she thought the property and its fruits belonged to her parents and acted in accordance; she acted for them in good faith and preserved the monies until a succession alleging rights to the fruits was opened. At that

point, she readily handed over control of the rental income that continued to accrue to the representative of the Estate, Celestine.

There is nothing to substantiate a claim of conversion or fault on the part of Dugas herself. She was only acting for Joseph and Rita, who asserted they possessed rights in the monies and thereafter assumed possession of them. No fault or offense on the part of Dugas has been proven. Therefore, under the substantive law of conversion, the facts and inferences are in favor of Dugas such that reasonable men could not arrive at a contrary verdict. The trial judge was reasonable in finding Celestine did not meet her burden of proof. We affirm the judgment of the trial judge.

Because there has been no showing of fault or a delictual action on the part of Dugas, we pretermit the issue of prescription.

**Assignment of Error No. 3:**

Celestine did not meet her burden of showing a fiduciary duty and breach and/or conversion on the part of Dugas. The trial judge did not err in finding Celestine failed to meet the standards of proof under these sources of recovery against Dugas personally. As such, she is not entitled to any monies from Dugas for breach of fiduciary duty or conversion.

**CONCLUSION**

Celestine did not meet her burden of proving a fiduciary duty, breach of that duty, or subsequent conversion on the part of Dugas such as to have a personal claim against Dugas for rental monies.

Costs of this appeal are assessed to Celestine, in her capacity as Executrix of the Estate.

**AFFIRMED.**

10