TUCKER, Judge.
The plaintiffs in Docket No. 8386, J. J. Smith, Warren L. Mengis, Lawrence A. Durant, Richard Eugene Burton and Charles William Roberts, are the owners of 122.3 acres of land situated in Section 54, Township 4, South, Range 3 East, and Sections 53 and 55, Township 5 South, Range 3 East, Greensburg Land District, Parish of East Baton Rouge, Louisiana, acquired by them in 1968. Defendants, Louis E. Chandler and his wife, Elizabeth Chandler, are the possessors and alleged owners of 140.11 acres of land, acquired in 1947, and located in Section 54, Township 4 South, Range 3 East, Parish of East Baton Rouge, Louisiana, which property lies in two tracts to the east and to the west of the Greenwell Springs Road, with the eastern tract consisting of 90.58 acres, and the western tract consisting of 47.48 acres. A portion of the latter tract consisting of 2.-05 acres lies and is situated on the Green-well Springs road. Defendants’ property is under cultivation for the most part and used for the raising of cattle. The plaintiffs’ property, bought principally for timber (Tr. 78), is completely landlocked, and has no access of any kind to any public road or waterway. Across the southern boundary of the western Chandler tract lies a road twenty (20) feet wide, with an additional five (5) feet on each side as a shoulder, to a length of one thousand seven hundred forty-six (1,746) feet. The land encompassed between the fences and traversed by the road comprises fifty-two thousand three hundred eighty (52,380) square feet or approximately 1.2 acres. On both its north and south sides the road is completely fenced off. The road or lane lies in the bed of a former footpath or trail which may have been in that location since 1919 (Tr. 59-62). It provides the only means of access to the Greenwell Springs road for the plaintiffs and Mrs. Rushing and for their ancestors in title. The path was located in the same place when the Chandlers bought their property in 1947, but no mention of it was made in the Chandlers’ act of sale.
*419 There is some testimony to the effect that a Mr. Sibley, who lived behind what is now the Chandler property and who used the road in question, spaded it up around 1946, when it was still a dirt road, although then little more than a pathway (Tr. 23, 39 and 40). The parish worked the road around 1948 or 1949. Defendant Chandler plowed out the road in 1952, and had it graveled in order that he might have better access to the back portions of his property for the purpose of feeding his cattle. In 1957 and 1966 pipeline servi-tudes were granted by the Chandlers to the Houston Texas Gas and Oil Co. and to the Florida Gas Transmission Co., respectively, for $2,000.00 each. These pipeline servi-tudes are immediately adjacent to the subject road and parallel with it, though underground. Defendants Chandler made no objection to the use of the road on their property by various and sundry persons until about four years previous to the filing of the present suit. Plaintiffs’ ancestor in title, a Mr. Quine, testified that the Chandlers’ objection to the use of the road by other people was coincident to a suit filed by the Quines against Mr. Ronaldson in regard to adjoining property (Tr. 61).
The Chandlers state that as time wore on the road was increasingly used more often by hunters, persons dumping trash on the rear of the property, family and friends of adjoining landowners and other uninvited persons. Finally they began to tell the road users that the road was not available for use, except with the Chandlers’ permission. When these warnings failed to achieve the desired result, the Chandlers posted “No Trespassing” and “No Hunting” signs at the entrance to the road from the Greenwell Springs Road. These signs were likewise ignored, and in desperation they contemplated closing the road altogether. About this juncture plaintiffs filed the present suit on June 3, 1969, alleging continuous harassment by the Chandlers. They asked for injunctive relief to prevent the Chandlers from interfering with their use of the road in question, and, alternatively, they asked that they be granted a servitude of passage along this road as the only means of access for them to the public road. They further asked that, in the event the trial court did find they were due a right of passage, they be condemned to pay no more than the sum of $100.00 for this servitude. The Chandlers answered asserting ownership of the subject road, and averred further that the right of passage along this road was well worth the sum of $5,000.00, and that an award in the sum of $2,000.00 should be granted for past trespasses and other outrageous conduct by the plaintiffs.
The defendants in our Docket No. 8386 then sued Mrs. Lurline W. Rushing, the owner of two landlocked acres of land to the west of the Chandlers and who had been using the Chandlers’ road for about five years without their permission, for the ostensible purpose of obtaining a judicial determination regarding the rights of all parties similarly situated. The Chandlers also demanded $2,000.00 damages for past trespasses committed by Mrs. Rushing. Mrs. Rushing denied that the Chandlers were the true owners of the land which was traversed by the road, alleging that the location of the road had been moved several times, and that the road presently did not actually lie on Chandler property. She further claimed that the title under which the Chandlers bought the property was not properly descriptive, and, therefore inadequate to transfer title. Mrs. Rushing also pleaded a “common law” dedication of the road to the public use.
Judgment was handed down by the trial court, decreeing the ownership of the road to be in the Chandlers, and granting a perpetual servitude of passage in favor of the five plaintiffs in our Docket No. 8386, and in favor of the defendant, Mrs. Rushing, in our Docket No. 8387, and with an award of $194.00 indemnification for the servitude to be equally divided among the six parties who owned the estates which were favored by the servitude.
The Chandlers appealed, alleging the sum of $194.00 was far below the amount *420 of actual damages which would be occasioned by the servitude, and that in any event it was only one-half the value assigned to the servitude by the expert appraiser whom the trial court chose to follow. The Chandlers charge further that the servitude is a predial one, running in favor of estates, not persons, and that each estate should have been assessed the cost of passage along the right of way. In this appeal they question the trial court’s rejection of their claim for damages on account of past trespasses, and contend the lower court incorrectly assessed them with the cost of their expert appraiser.
Plaintiffs in our Docket No. 8386, Smith, et al., answered the appeal, still questioning the ownership of the road, and alleging that, under such uncertain circumstances where they may be subject to some other suit in regard to this same servitude, the sum of $100.00 would be a more proper award than the amount of $194.00 actually granted for the right of passage. They acknowledge that the servitude is predial in nature and due by the servient estate to the dominant estate, but point out that this was also acknowledged by the lower court judge in his judgment, despite language to the contrary in his reasons for judgment, which are not controlling. They allege the trial court merely prescribed a method of payment. They deny that C.C. Art. 699 requires indemnification by each estate awarded a servitude of passage. They allege that the proper interpretation of the aforesaid article is based upon the damage done by the servitude, and not upon the value of the land involved. They deny any damage, and object to being cast for any costs of the lower court proceedings when they prevailed in gaining the servitude which they sought.
Defendant in our Docket No. 8387, Mrs. Rushing, answered also alleging that the sum of $100.00 is more than sufficient to cover and indemnify the Chandlers for any damages which might be done by the creation of the servitude. She also reiterated her allegations of lack of ownership in the Chandlers to the land traversed by the road, and, alternatively, that the roadway had been dedicated to the public use by the Chandlers. She also dislikes the manner in which the court costs have been assessed. She also calls attention to the fact that she is an indigent, entitled to the relief provided under the terms of C. C.P. Arts. 5181, et seq., and Art. 5185 in particular.
While plaintiffs in the first suit, Smith, et al., and the defendant in the second suit, Mrs. Rushing, attack the Chandlers’ title to land traversed by the subject road, they neither allege title in themselves nor in any other • specific persons. Although the record indicates the fences enclosing the road have been moved on several occasions, there is ample evidence in support of the trial court’s finding that the title to the land, occupied by the roadway, is owned by the Chandlers.
We now consider the contention that the road has been dedicated by the Chandlers to the public use. Although there was no specific listing of the issue of “common law” or tacit dedication of the subject road to the public use for discussion or resolution at the pre-trial conference, the judge a quo, in his reasons for judgment, ruled against the validity of any claims of a dedication to the public use of the road in question. In their appellate memoranda appellees have made confusing allegations of “common law” implied and tacit dedications.
Of course, in Louisiana the law and the jurisprudence do not recognize and countenance such a tenet known as “common law” dedication, but implied dedication has long been known to the Civil law of Louisiana, even without a statutory basis. The two elements required for implied dedication are lacking in this case, to wit: an intent on the part of the landowner to give the public the use of the road, and acceptance by the public of the use offered. The record is devoid of any evi *421 dence indicating an intent on the part of the Chandlers to give the use of the road to the public. On the contrary all evidence is to the effect that the road began as a footpath, which the Summerses, ancestors in title of the Chandlers, permitted Mr. Sibley, and Mr. Sibley only, to use, and later was developed as a road by the Chandlers, primarily for their own use and access to their “back” property, and, secondarily, as ingress and egress to a few land-locked neighbors. There is no evidence that the public at large made use of this road, and its use was confined mostly to the land-locked neighbors, their family and friends, and a few hunters, which limited usage could hardly be characterized as public in nature. See Bomar v. City of Baton Rouge, 162 La. 342, 110 So., 497, 499 (1926) and United Gas Pipe Line Co. v. New Orleans Terminal Co., 156 So.2d 297, 299 (La.App.4th Cir. 1963), holding silence alone will not effect a public dedication. See also Martini v. Cowart, 18 So.2d 849 (La.App.2d Cir. 1944).
There is no evidence in the record that the subject road has been worked or maintained by the city or parish governing authority for a period of three years, so the statutory provisions, pointing out the only other method by which dedication to the public use of a road may be accomplished encompassed in R.S. 48:491, as amended, have no application here. See Town of Eunice v. Childs, 205 So.2d 897 (La.App.3d Cir. 1967); writs refused 1968.
This case appears to come squarely within the provisions of C.C. art. 699, which provides as follows :
“The owner whose estate is enclosed, and who has no way to a public road, a railroad, a tramroad or a water course may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, tram-road or water course and shall have the right to construct a road, railroad, or tramroad or water course according to circumstances and as the exigencies of the case may acquire (require), over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road, railroad, tramroad or water course, or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion.”
Art. 700 provides that the passage be where the distance is the shortest from the enclosed estate to the public road; and that it be in the place least injurious to the owner on whose estate the passage is granted. Art. 701 provides that the owner of land on which there was previous right of passage must grant it to new purchaser of property even where there was no right provided in act of sale. Art. 703 states that, once fixed, the right of passage cannot be changed by the user of servitude, only by the owner to suit his convenience.
Under all of the foregoing provisions the Chandlers clearly owe Smith, et al., and Mrs. Rushing a right of passage along the road in question, which is presumed to be the shortest and best route, since there is no evidence to the contrary. It appears to be the one least injurious to the Chandlers inasmuch as it has been laid out by them as a road and fenced off from their other property.
Although the expert appraisers for both sides of the litigation, Messrs. Williams and Lejeune, proceeded on the basis that there would be a complete or partially complete “taking” of the land involved, just as in the case of expropriation, the said code art. 699 clearly states that the person using the servitude is bound to indemnify his neighbor “in proportion to the damage he may occasion”. There is no taking here. By their own testimony they built the road for their own purposes, and the Chandlers are in no way deprived of the use of their road. Indemnification of the Chandlers should be based upon the actual damage which plaintiffs and Mrs. *422 Rushing cause, and they urgently contend that this sum should be in the nominal bracket, and not in excess of $100.00.
We gather from the testimony of the expert real estate appraiser, Mr. John Lejeune, that he was commissioned to appraise a strip of land twenty feet in width; that the widest part of the actual road surface is between eight and nine feet; that some eleven feet is not encompassed in the road proper, presumably, by analogy, being used as shoulders. Mr. Lejeune, nevertheless, concedes that the width of the property enclosed by the fences is thirty feet, extending to the full length of 1746.5 feet (Tr. 111). In other words Mr. Lejeune found property to the width of five feet bordering both the north and south fences not associated with the passage way, but he suggests that the only use feasible for these two five foot strips, if the servitude were granted, would be for the maintenance and upkeep of the road. This is an apparent and discontinuing servitude and not a perpetual one.
On the other hand the expert real estate appraiser, Mr. Wayne Williams, testified in substance that he made his calculations on the basis of the entire width of the property enclosed within the fences which was thirty feet; that the actual road surface was twelve feet wide, and from ditch bank to ditch bank the total width was twenty-two feet (Tr. 167).
The trial court chose to follow the rea-, soning of Mr. Lejeune, and considered the tract involved to comprise .969 acres at an established value of $800.00 per acre. This means that the 20 foot strip involved, according to Mr. Lejeune, would be worth $775.20, and ascribing a 50% loss to the property occasioned by the servitude, a round figure of $388.00 in damages is reached by this appraiser. For some unexplained reason the trial judge reduced this latter figure by an additional 50% and fixed the value of the servitude at $194.00. While we do not believe the means and methods adopted .by the appraisers in determining the damages occasioned to the property of the Chandlers by the award of the servitude were correct, certainly, if full credence is given to the opinion of Lejeune, an award of damages in the sum of $388.00 would have followed naturally.
Though there is paucity of evidence dealing with the actual damages which will be suffered by the Chandlers with the judicial creation of the servitude requiring the continuation of the road, which has been in existence for many years, we are constrained to hold that the sum of $500.00 represents a fair nominal figure in damages for the loss to be experienced by the Chandlers. This course in determining damages will, in some degree, recognize and give weight to the composite expert testimony elicited in the lower court.
This court holds that the trial judge was correct in rejecting the demands of the Chandlers for past and future trespass damages, and for the value of the road construction. The granting of this servitude will not deprive the defendants of the land ownership or the use of the subject road, and the record clearly shows that the Chandlers improved the roadway primarily for their own purposes, with an incidental result of benefitting their landlocked neighbors.
Both sides of this dispute are correct in their joint contention that a predial servitude is one that runs in favor of an estate and not of a person (C.C. Arts. 646, et seq.). Both of the judgments are couched in language clearly making this distinction as opposed to the trial court’s reasons for judgment, which are not controlling.
The final problem for our consideration is the lower court’s assessment of the court costs developed there. The plaintiffs in the first suit and Mrs. Rushing, defendant in the second suit, contend that they have been successful in obtaining a servitude of passage which was all they desired at the outset. Additionally, Mrs. Rushing advances the thesis that she was *423 drawn into the litigation without any desire on her part, and that, moreover, she is an indigent. Smith, et al. take especial exception to their being charged with the expert witness fee of Robert M. Day, who was called by the Chandlers. The trial court ordered Smith, et al. to pay all costs in the original suit, including the fee of Robert Day. Each side was cast with all fees and costs of their respective real estate appraisers. The Chandlers reason that, although they were cast by the judgment insofar as it judicially fixed the servitude, Smith, et al. and Mrs. Rushing were ordered to indemnify them for damages caused by the creation of the servitude, where the roadway had been used without cost for many years. Therefore, the Chandlers feel they were the successful parties in the litigation, and they should not be required to pay their expert appraiser, Wayne Williams. In the Rushing suit, this court’s Docket No. 8387, Chandler v. Rushing, 251 So.2d 423, the trial court cast the Chandler plaintiffs with all costs, noting that the fee of Robert M. Day had been taxed to Smith, et al. in the initial suit, our Docket No. 8386.
While C.C.P. Art. 2164 gives this court authority to “* * * * * tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable,” C.C.P. Art. 1920, using substantially the same wording, gives the trial court the same authority to tax costs in that court. Article 1920 provides: “* * * * * j.fie court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.” In view of the provisions of Article 1920 it is clear that the imposition of costs is discretionary with the trial court. There is no evidence before this court which indicates an abuse of the sound discretion of the trial court in making its imposition of the costs.
It is true that this court has elevated the amounts of indemnification due the Chandlers as damages, but we do not consider that this will be such a change or alteration of the trial court judgments that such would justify an interference by this court with respect to the format followed by the trial court in the allocation of the costs below.
Since there are five of the six estates to which this servitude is owed involved in our Docket No. 8386, five-sixths ($4) of the total damages of $500.00 awarded here are attributable to the plaintiffs in this suit.
For the foregoing reasons, the judgment of the lower court in the suit entitled J. J. Smith, et al. v. Louis E. Chandler et ux., No. 8386 on the docket of this court, is amended by increasing the indemnification award for the damages caused by the creation of the servitude from the sum of One Hundred Ninety-Four and No/100 (194.00) Dollars to the sum of Four Hundred Sixteen and 6%oo ($416.67) Dollars, and in all other respects the judgment is affirmed.
Plaintiffs, Smith, et al., will pay the costs of this appeal.
Affirmed as amended.