# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 11-1277 C/W 11-1278, 11-1279

**E. SMITH PLUMBING, INC.**
**SMITH AIR CONDITIONING, INC,**
**AND**
**VILLE PLATTE CONCRETE SERVICES, INC.**

**VERSUS**

**JOSHUA PAUL MANUEL AND**
**CORA ELIZABETH MONIER MANUEL**

**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**THIRTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF EVANGELINE, DOCKET NOS. 71250, 71257, and 71446**
**HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Chief Judge Ulysses Gene Thibodeaux, and Judges Sylvia R. Cooks and Billy H. Ezell.

**Reversed in part, and Judgment Rendered.**

Bruce Achille Gaudin
100 West Bellevue Street
Opelousas, LA 70570
(337) 948-3818
**ATTORNEY FOR DEFENDANTS/APPELLANTS**
Joshua Paul Manuel and Cora Elizabeth Monier Manuel

C. Brent Coreil
P.O. Drawer 450
Ville Platte, LA 70586
(337) 363-5596
**ATTORNEY FOR PLAINTIFFS/APPELLEES**
E. Smith Plumbing, Inc., Smith Air Conditioning, Inc.,
And
Ville Platte Concrete Services, Inc.

**Cooks, Judge**

## FACTS AND PROCEDURAL HISTORY

Joshua Paul Manuel (Joshua) and Cora Elizabeth Monier Manuel (Cora) engaged the services of Drake Fontenot (Fontenot) to build a home in Evangeline Parish, Louisiana. Fontenot was hired to build Joshua and Cora's residence on the basis of his reputation as a home builder in their area and based upon his bid proposal. Fontenot submitted a contract to Joshua and Cora, but neither one of them signed the contract. Cora made changes to lower the overall cost of the project and discussed these changes with Fontenot. Fontenot agreed to proceed under the revised figures and commenced the building of Joshua and Cora's home.

Cora handled the negotiations with Fontenot, and she worked directly with him and various subcontractors throughout the construction of their home. Joshua had little direct involvement in the day-to-day dealings with Fontenot or any of the subcontractors. Cora handled the financial record keeping and the delivery of payments to Fontenot and others involved in the construction of their home.

Throughout the project, and to its completion, Fontenot charged Joshua and Cora for carpenter labor, which included himself, his workers, a per-hour fee for each worker as part of Fontenot's fee, and for the cost of materials purchased by him. Fontenot did not add any amount to materials he purchased for the project nor did he add any amount to any of the subcontractors' bills for their labor and materials. This was true for all subcontractors, including the Plaintiffs. The three Plaintiff/Subcontractors sent invoices to Fontenot indicating he was the contractor on the job building Joshua and Cora's home. Cora usually made payments to Fontenot when requested throughout the project to pay him, his workers, and subcontractors, and, on some occasions, paid certain subcontractors directly.

The three Plaintiffs/Subcontractors herein all provided materials and/or services in the construction of Joshua and Cora's home. All three Plaintiffs had a long-standing relationship with Fontenot as a general contractor building homes in their area. Fontenot chose each of the Plaintiffs/Subcontractors to perform work on Joshua and Cora's home. Each testified that they entered into agreement with Fontenot to provide their respective services as subcontractors relying on their past experience with Fontenot. None of the parties had any contractual agreement directly with Joshua or Cora. After completing work on Joshua and Cora's home each of the Plaintiffs were left with an outstanding balance owed for services and/or materials provided.

All parties stipulated to the amount owed each of the three Plaintiffs. Joshua and Cora do not dispute that the Plaintiffs actually performed the work for which they invoiced Fontenot, and they do not assert that any of the Plaintiffs' work was improperly done. Joshua and Cora further acknowledged that these subcontractors have not been paid the outstanding balances claimed. Joshua and Cora maintain they held back the money owed to Plaintiffs, at the end of the project, because they believe Fontenot overcharged them for his labor. They assert they feared if they paid the amount owed to Plaintiffs directly to Fontenot he would not pay these subcontractors because he claimed he was owed additional money on the project for his labor, and had an outstanding bill for his unpaid labor. Cora represented to Plaintiffs, and maintained both before and during trial, that she and her husband owed each of the Plaintiffs for their outstanding bills and promised these debts would be paid.

Joshua and Cora moved into their new home on July 25, 2009. E. Smith Plumbing, Inc. (Smith Plumbing) submitted a letter into evidence informing Joshua

2

and Cora that they owed $18,556.00, and if it remained unpaid a lien would be filed on "October 1st." Smith Plumbing filed a lien in Evangeline Parish on October 2, 2009, and Smith Air Conditioning, Inc. (Smith A.C.) filed a lien in Evangeline Parish on October 5, 2009. Smith A.C. and Smith Plumbing thereafter sent a certified letter to Joshua and Cora, return receipt requested, dated October 14, 2009. This letter informed Joshua and Cora that the liens had been filed, and also stated that the letter should be considered a written demand for payment in the amount of $7,618.00 for Smith A.C., and $18,566.00 for Smith Plumbing. A copy of the letter was sent to Fontenot. The third Plaintiff, Ville Platte Concrete Service, Inc. (Concrete Service) did not file a lien though their bill was not paid.

Smith A.C. and Smith Plumbing filed suit against Joshua, Cora, and Fontenot in December, 2009, for the amounts owed, plus attorney fees and legal interest from date of judicial demand. Both of these Plaintiffs alleged in their suits "some of the balance due is an open account owed by the Manuel's (Joshua and Cora), with a portion being contractual and being owed by Drake Fontenot." The petition does not allege what portion is owed by each of the named parties. Joshua and Cora filed a third-party demand against Fontenot, alleging Fontenot overcharged them in the amount of $20,595.00 and alleging that they "paid Drake Fontenot over $300,000.00 and he should have paid the plaintiff[s] in full from the money he received." The total bid price for the job was $327,151.00.

Joshua and Cora also filed a reconventional demand against Smith A.C. and Smith Plumbing for damages and attorney fees for improperly filing liens and refusing to cancel the liens after written request to cancel within ten days of the notice.

Concrete Service sent a demand letter to Joshua and Cora dated February 4, 2010, return receipt requested, stating it was owed "on an open account" the sum of $7,030.50. The demand letter was addressed to Fontenot, Joshua, and Cora. Because the amount went unpaid, Concrete Service filed a suit on open account on March 5, 2010, against Joshua, Cora, and Fontenot. Joshua and Cora filed a third party demand against Fontenot alleging he was the general contractor, and that if they owed Concrete Service any sum they were entitled to indemnity by Fontenot for any such amount.

By letter dated April 27, 2010, Joshua and Cora's attorney informed Plaintiffs' attorney that the liens were improperly filed and requested the liens be cancelled "within ten days" failing which, Joshua and Cora would sue Plaintiffs for damages and attorney fees. The liens were not cancelled until September 28, 2010.

Following a bench trial, the trial court rendered judgment in favor of the Plaintiffs awarding each the stipulated amount owed on open account; attorney fees for each in the amount of $2,500.00; all costs of court; and legal interest from date of judicial demand. This part of the judgment was against Joshua and Cora. The trial court dismissed all of Joshua and Cora's reconventional and third-party demands at their cost. The trial court thereafter signed an amended judgment which dismissed: all claims by Plaintiffs against Drake Fontenot; Joshua and Cora's third-party demands against Drake Fontenot; and Drake Fontenot's reconventional demand against Joshua and Cora. Joshua and Cora appeal the original judgment of the trial court and expressly state in their brief to this court that they have not appealed the amended judgment. No other parties have answered the appeal nor have they appealed the judgment or amended judgment. Therefore, the amended judgment is final. Thus, the third-party demands by

4

Joshua and Cora against Fontenot, and all of the Plaintiffs' claims against Fontenot are dismissed. We note particularly Fontenot's reconventional demand against Joshua and Cora was dismissed, relieving them of any future obligation to pay him additional money for his work on the project.

Joshua and Cora assert two assignments of error arguing the trial court erred in finding Plaintiffs' claims were based on open accounts, and erred in dismissing Joshua and Cora's reconventional demand against the Plaintiffs based on the Plaintiffs' failure to cancel the untimely liens within ten days of written demand.

## LAW AND DISCUSSION

We find that the amounts owed to the three Plaintiffs are indeed owed on an open account. *See Credit Bureau Services v. Lundberg*, 08-1523 (La. App. 3 Cir. 5/6/09), 10 So.3d 883. Louisiana Revised Statutes 9:2781(D) (emphasis added) defines an open account:

> For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not *at the time of contracting the parties expected future transactions.* "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.

However, we also find that the trial court erred as a matter of law in finding that Joshua and Cora established an open account with any of the Plaintiffs. They did not. There is no signed contract between Cora and Joshua and any of the Plaintiffs. Our review of the record reveals that Fontenot opened an account with the Plaintiffs/Subcontractors regarding the home building project for Joshua and Cora. These accounts are evidenced by the consistent billing sent to Fontenot, in his name, identifying him as "contractor," for work done on Joshua and Cora's

5

home. It is clear that all of the Plaintiffs/Subcontractors dealt with Fontenot on this project as the general contractor. All of the Plaintiffs had a long-standing relationship with Fontenot and relied on *his* reputation with them in establishing the accounts for this project. They had no relationship with Joshua and Cora, and it was Fontenot who chose the Plaintiffs to perform services for the construction of this house.

In *Bieber-Guillory v. Aswell*, 98-559 p.7 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145, 1149-50 (emphasis added) we explained the evidentiary showing a plaintiff must make in proving a right to recovery on an open account and further explained that:

> This required showing by the plaintiff presupposes the existence of an enforceable contract between the parties. "For there to be an action on an open account, *there must necessarily be a contract which gave rise to the debt.*" *Blackie's Rental Tool & Supply v. Vanway*, 563 So.2d 350, 353 (La.App. 3 Cir. 1990). A creditor suing on open account must prove that the debtor contracted for the sales on open account. *Id*; *Advertiser Div. v. Southwest Mortg. & Inv.*, 424 So.2d 1284 (La.App. 3 Cir. 1982). When there is no meeting of the minds between the parties, there is no consent, thus no enforceable contract. La.Civ.Code art. 1927. Such that, if there is no enforceable contract, the plaintiff's attempt to prove the existence of an open account by establishing a prima facie case becomes extraneous.

Plaintiffs fail to meet their burden to prove that they had an open account with Joshua and Cora. There was no meeting of the minds between the Plaintiffs and Joshua and Cora. The contract was between Fontenot and the Plaintiffs.

Concrete Service argues that its outstanding bill for concrete supplied for the driveway on this project was an open account with Joshua and Cora because it was an item added to the original building contract. We find the record shows that although the concrete work on the driveway was an addition to the project not mentioned in the original plans, it was invoiced in the same manner as the other

6

concrete work, on open account with Fontenot. James Deville (Deville) testified on behalf of Concrete Service and stated that it was not unusual for a driveway to be an added feature on a home construction project. He testified that he did not know who ordered the concrete for the driveway. Deville also testified he met Cora only once, at her home, when the slab for her house was being poured. He additionally testified that the customary practice is that the contractor orders the concrete because the homeowner has no idea of the amount of yardage needed. There is no dispute Fontenot contracted with Concrete Service for the earlier slab concrete provided on Joshua and Cora's home building project. As La.R.S. 9:2781(D) (emphasis added) states, the open account includes any amount past due "*whether or not at the time of contracting the parties expected future transactions.*" *See also Credit Bureau Services*, 10 So.3d at 884.

Additionally, we reject the assertion that Fontenot acted as agent or mandatory for Joshua and Cora.

> Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under Civil Code Article 2985 or by implied appointment arising from apparent authority, *Lou-Ark Equipment Rentals, Co. v. Hong Ah-Fong*, 355 So.2d 1019 (La. App. 4th Cir. 1978). . . . It is settled law in this State that an agency relationship cannot be presumed, it must be clearly established.

*Roberson Adver. Serv., Inc. v. Winnfield Life Ins. Co.*, 453 So.2d 662, 665 (La.App. 5 Cir. 1984).

No such appointment was made by Joshua or Cora and there is nothing in the record to suggest any implied appointment of Fontenot as their agent or mandatory. Moreover, any of the parties dealing with Fontenot on Joshua and Cora's project "had an affirmative duty to determine the extent and scope of"

7

Fontenot's authority to bind Joshua and Cora. *Roberson Ad. Serv., Inc.,* 453 So.2d at 665. There is no evidence to this effect anywhere in this record.

Under the provisions of La.R.S.9:2781(A), the Plaintiffs would be entitled to recover attorney fees and costs against Fontenot, who was also a named Defendant, however, in failing to appeal the amended judgment which dismissed all of Plaintiffs' claims against Fontenot, they have lost their right to recover these damages from Fontenot. The Plaintiffs are not entitled to recover attorney fees and costs against Joshua and Cora because the open accounts were between Fontenot and the Plaintiffs. We therefore reverse that portion of the judgment awarding such damages against Joshua and Cora.

We also reject the notion that the Plaintiffs/Subcontractors are entitled to recover under the theory of *actio in rem verso*, or unjust enrichment. There are five elements to recovery under this theory including the "absence of a remedy at law." *Roberson*, 453 So.2d at 665 (citing *Minyard v. Curtis Products, Inc.,* 251 So.2d 422 (La.1967) and *G. Woodward Jackson Co., Inc. v. Crispens*, 414 So. 2d 855 (La.App. 4 Cir. 1982)). Quoting the learned Justice Albert Tate, the court in *Roberson* found the equitable remedy of unjust enrichment unavailable to a plaintiff despite the fact that the defendant had been enriched at the expense of plaintiff's impoverishment. Justice Tate explained the inapplicability of this remedy as follows:

> [N]o other legal remedy is practically available to the impoverished plaintiff by which the impoverishment might be or might reasonably have been avoided (this is the principle of "subsidiarity" by which the extraordinary remedy of unjustified enrichment, not provided by the Civil Code, is regarded as unavailable where another legal remedy could have prevented the impoverishment).

> Id. at 666.

The Plaintiffs/Sub-contractors here had additional legal remedies available to them including collecting on an open account against Fontenot. They also could have timely filed liens to recover from the owners of the property on which they had provided goods and services, but, as discussed below, failed to do so. They are therefore prohibited from resorting to the extraordinary remedy of unjust enrichment.

We find that the liens filed by Smith A.C. and Smith Plumbing were untimely filed. Subcontractors like Plaintiffs herein are accorded a privilege on an immovable securing certain obligations under the provisions of La. R.S. 9:4801.

> The following persons have a privilege on an immovable to secure the following obligations of the owner arising out of a work on the immovable:
>
> (1) Contractors, for the price of their work.
>
> (2) Laborers or employees of the owner, for the price of work performed at the site of the immovable.
>
> (3) Sellers, for the price of movables sold to the owner that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.

They are also accorded a claim against the owner and contractor of a construction project under the provisions of La.R.S. 9:4802(A)and (E):

> A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
>
> (1) Subcontractors, for the price of their work.
>
> (2) Laborers or employees of the contractor or a subcontractor, for the price of work performed at the site of the immovable.
>
> (3) Sellers, for the price of movables sold to the contractor or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable.

E.  A claimant may assert his claim against either the contractor, his surety, or the owner without the joinder of the others.  The claim shall not be subject to a plea of discussion or division.

. . . .

The procedure for preserving these claims and privileges over an owner's property in a construction project are provided for in La.R.S. 9:4822(C):

Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:

(1)  The filing of a notice of termination of the work; or

(2)  The substantial completion or abandonment of the work, if a notice of termination is not filed.

It is without dispute that no notice of termination was filed in this matter.  There is no serious dispute that Joshua and Cora moved into and began living in their new home on July 25, 2009.  Louisiana law statutorily defines "substantial completion" in La.R.S. 9:4822(H) (emphasis added) as follows:

H.  A work is substantially completed when:

(1)  The last work is performed on, or materials are delivered to the site of the immovable or to that portion or area with respect to which a notice of partial termination is filed; or

(2) *The owner accepts the improvement, possesses or occupies the immovable,* or that portion or area of the immovable with respect to which a notice or partial termination is filed, *although minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied.*

Joshua and Cora's home was substantially completed as of July 25, 2009.

Plaintiffs assert that additional work was performed on the house after that date, but we find these were merely "minor or inconsequential" items of work such as installation of a light fixture.  The Plaintiffs had sixty days from July 25, 2009, to file their liens.  The earliest lien was not filed until October 2, 2009, beyond the

10

sixty-day time limit. The liens were therefore invalid, and, under the express provisions of La.R.S. 9:4823 the Plaintiffs' privilege and claim were extinguished:

> A. A privilege given by R.S. 9:4801, a claim against the owner and the privilege securing it granted by R.S. 9: 4802, or a claim against the contractor granted by R.S. 9:4802 is extinguished if:
>
> (1) The claimant or holder of the privilege does not preserve it as required by R.S. 9:4822. . . .

Joshua and Cora sent written demand requesting that Smith A.C. and Smith Plumbing cancel the liens within ten days of receipt of notice for the reason that the liens were untimely filed. This request went unanswered, and the liens were not cancelled until almost five months after written demand to remove the liens. Cora and Joshua are therefore entitled to recover attorney fees, costs and general damages for the untimely filed liens as provided in La.R.S. 9:4833:

> A. If a statement of claim or privilege is improperly filed or if the claim or privilege preserved by the filing of a statement of claim or privilege is extinguished, an owner or other interested person may require the person who has filed a statement of the claim or privilege to give a written request for cancellation in the manner provided by law directing the recorder of mortgages to cancel the statement of claim or privilege from his records. The request shall be delivered within ten days after a written request for it is received by the person filing the statement of claim or privilege.
>
> B. One who, without reasonable cause, fails to deliver a written request for cancellation in proper form to cancel the claim or privilege as required by Subsection A of this Section shall be liable for damages suffered by the owner or person requesting the authorization as a consequence of the failure and for reasonable attorney fees incurred in causing the statement to be cancelled.

Cora and Joshua testified that the filing of these liens caused them much anxiety. The liens remained in place for approximately five months. We find an award of $2,000.00, plus legal interest from date of judicial demand until paid, to Cora, and $2,000.00, plus legal interest from date of judicial demand until paid, to

11

Joshua for general damages is appropriate, as well as an award for reasonable attorney fees in the amount of $3,500.00 to Joshua and Cora.

Although we find the Plaintiffs cannot avail themselves of an unjust enrichment claim, we also find that Cora created a civil obligation to pay the Plaintiffs for the agreed amounts owed because she acknowledged and reaffirmed the debt, and by her own words, promised, even at trial under oath, to pay the stipulated amounts owed to Plaintiffs.

> A natural obligation may serve as consideration or cause for a civil obligation. See, LSA-C.C. art. 1761; *Thomas v. Bryant*, 25,855 (La.App. 2 Cir. 6/22/94), 639 So.2d 378, 380. According to LSA-C.C. art. 1760, a natural obligation "arises from circumstances in which the law implies a particular moral duty to render a performance." However, not every moral duty will give rise to a natural obligation. See, LSA-C.C. art. 1762, comment (b). In *Thomas v. Bryant*, the court recognized that the following requirements must be satisfied in order for a moral duty to constitute a natural obligation:
>
> > (1) The moral duty must be felt towards a particular person, not all persons in general.
> >
> > (2) The person involved feels so strongly about the moral duty that he truly feels he owes a debt.
> >
> > (3) The duty can be fulfilled through rendering a performance whose object is pecuniary.
> >
> > (4) A recognition of the obligation by the obligor must occur, either by performing the obligation or by promising to perform. This recognition brings the natural obligation into existence and makes it a civil obligation.
> >
> > (5) Fulfillment of the moral duty must not impair the public order.

*Azaretta v. Manalla*, 00-227 (La.App. 5 Cir. 7/25/00), 768 So.2d 179, 180. *See also Succession of Aurianne*, 219 La. 7a, 53 So.2d 901, 904 (1951) which held that "[a] promise to pay a debt made after prescription has accrued creates a new obligation binding on the debtor." Further, Cora admitted the work was

satisfactory. She testified that her refusal to pay the Plaintiffs was based on her dispute with Fontenot and acknowledged the Plaintiffs deserved to be paid.

For the reasons stated, we render judgment in favor of Smith Plumbing in the amount of $18,566.06, plus legal interest from date of judicial demand until paid; Smith A.C. in the amount of $7,618.00, plus legal interest from date of judicial demand until paid; and Concrete Service in the amount of $7,030.50, plus legal interest from date of judicial demand until paid. The law does not entitle Plaintiffs to recover attorney fees on these civil obligations from Joshua and Cora.

We further render judgment in the amount of $2,000.00, plus legal interest from date of judicial demand until paid, to Cora, and $2,000.00, plus legal interest from date of judicial demand until paid, to Joshua for general damages, as well as an award for reasonable attorney fees in the amount of $3,500.00 to Joshua and Cora.

Court costs in each of the three consolidated proceedings are to be divided as follows. In *Smith Plumbing v. Joshua Paul Manuel, Et al*., Docket Number 71250, Thirteenth Judicial District Court, Smith Plumbing shall pay fifty percent of court costs, and Joshua and Cora Manuel will pay fifty percent of court costs. In *Smith Air Conditioning, Inc. v. Joshua Paul Manuel, Et Al.,* Docket Number 71257, Thirteenth Judicial District Court, Smith Air Conditioning, Inc. shall pay fifty percent of court costs, and Joshua and Cora Manuel will pay fifty percent of court costs. In *Ville Platte Concrete Service, Inc., v, Joshua Paul Manuel, Et Al*., Docket Number 71446, Thirteenth Judicial District Court, all court costs are to be paid by Joshua and Cora.

**Reversed in part, and Judgment Rendered.**

13